et al., 24-3262 and 24-3263. The appellees are on submission, meaning there will be no one arguing for the appellees, but we do have counsel, I'm sorry, it's confusing here. We have Attorney Shulman, we have many crosses and defendants, why don't you just tell me exactly what the procedural posture of your client is because there are too many titles on the brief. May it please the court, Denise Shulman for the plaintiff appellees and the cross appellant. The undisputed harm that Plaintiff Hook suffered for unpaid minimum wage and overtime compensation are fairly traceable to the wage notice and wage statement violations and the district court error in finding that she left standing. Starting with the wage notice violation under Section 195-1, when Hook was hired, she was not told in writing that defendants were claiming a $5 per hour tip credit even though defendants in fact paid her $10 per hour rather than the full $15 minimum wage. That specific omission violated 195-1 and made the payment of the tip credit rate an underpayment of minimum wage compensation. That establishes traceability for Article 3 standing. Can I ask a sort of procedural question? All of the other plaintiffs, I think in an effort to generate a final judgment, voluntarily withdrew that claim. Hook was dismissed without prejudice, meaning presumably she could refile with the additional missing piece. I'm puzzled as to what you're looking for here as a remedy. Are you looking for a remand to actually litigate this in the district court? We are looking for a remand as to Plaintiff Hook only. The class member's 195 claims were also dismissed, but those were effectively dismissed without leave to replead, so those are out of the case. Well no, they voluntarily dismissed them, but it wasn't without prejudice. Did they go to the state court? It was without prejudice so that they could pursue them in state court if they wished. The district court's order made clear that it was without leave to replead. The judgment was entered, it just said without prejudice, silent as to repleading. We actually asked for the court to clarify that. Right, because you wanted to make sure that it was a final judgment.  Her order denying her request said, well since I didn't give leave to replead, they don't have leave to replead, so those claims are out. Right, and it needed to be without prejudice because it was a threshold issue rather than a merit issue. Exactly. There was no way that those claims could have been dismissed with prejudice in this case, even if they were fully litigated, because as the R&R correctly found, defendants did violate 195, it was only a question of standing. It's just puzzling to me that having, I take it they didn't go to state court to pursue their claims. As far as I know, no one has done that. They're absent class members, so they tend not to be too active. Well, Martinenko's not an absent class member. No, Martinenko is not. She's not pursuing them either. But Huck wants to. Yes, just to resolve it in this case, yes. And how do you get around Guthrie? I think this is right in line with Guthrie. Guthrie recognized that these types of violations can lead to monetary injury. It said that the harm that is necessary for standing does not have to be greater than the underlying wage violations. That logic only holds if there is a way for the wage violations to ultimately cause an underpayment. This is actually a more direct path than what Guthrie was talking about and what a lot of other district court decisions have talked about where the plaintiff alleges, if I had this information, I would have taken action sooner to recover the underpayment. Here, the notice failure is the very thing that made the payment of the tip credit rate an underpayment. It's a direct link. No, the underpayment. Oh, I'm sorry. No, I was just going to say the secondary portion of what was missing. Is the harm treated just from the lack of 195 notice or also this other, what is it, the 12-NYCRR-146, the other step provision that required notice about what happens when you're not, when you're factoring in tips. 146-2.2, the specific notice requirements that are listed there, all but one of them are specifically listed in 195. They're very complementary provisions, number one. If the 195 notice had been provided and said you're getting a $5 per hour tip credit, that piece of 2.2 is satisfied. Any missing piece makes the use of the tip credit illegal and makes it an underpayment. Each piece individually causes the underpayment. I thought it's just their underpayment causes the underpayment. You're saying their lack of giving a notice caused the employer to underpay? That suggests that they wouldn't have underpaid anyway. What's the basis for saying that? The basis for saying that is that written notice is a requirement for an employer to avail themselves of the tip credit. If they choose not to give that notice, they have to pay the full minimum wage rather than the tip credit. I thought the point is they broke the law. They underpaid people. The whole idea that if they had complied with one law, they never would have broken another law, that seems to be the premise of your argument, but here we have people who broke the law. They underpaid these servers. They underpaid them, but it was an underpayment because of the lack of notice. You can pay tipped employees $10 per hour if you provide them with the proper notice. So what's left of Guthrie then? Would every tip credit case fall outside Guthrie? And be like, well, actually, there's always causation. There's always causation. The lack of adequate wage notice is always causing the underpayment. Is that correct? No. It depends on the nature of the wage notice violation. So 195 requires a wage notice to list all allowances, which would include, say, a meal allowance, that many employees. That's what I'm saying, but tip credit cases, all of them get around Guthrie in your view? Well, no, I'm speaking about a tip credit case. So if an employer gives a notice that lists the tip credit with everything else but it doesn't list the meal allowance, that's a 195-1 violation, but that has no impact on the tip credit whatsoever. If the wage notice doesn't have a phone number, that's a 195-1 violation that has no impact on the tip credit. So it depends on the nature of the violation. In this case, there was no notice whatsoever. So the argument is in the unique circumstance of the tip credit, the absence of notice is inextricably intertwined with the violation. If there had been notice, there wouldn't have been a violation substantively, and so you can't say there are two different violations that can exist independent of one another.  Why couldn't somebody just, I don't know, issue the correct wage notice and just underpay somebody? They can, but it wouldn't be an underpayment by virtue of the tip credit. In this case, we also had a— The notice says you're supposed to get $50, and they give them $25. Well, that's a different type of violation. That would be— Basically, I'm saying assume that wage notice properly says, I owe you $50, and it's correct, but they pay them $25. So in that case, the wage notice has no impact. The wage notice is not a cause of the underpayment in that case because— Exactly. That's my point is that you could screw around with the wage notice and still underpay them or not. You can, but with the tip credit, it's a little different because if an employer gives you a wage notice that says, I'm going to pay you $50, then they actually pay you $25. There's no relationship between what the notice says and the underpayment. You would have a claim, a state law claim for the unpaid wages, but it's not caused by the notice. In fact, I would say in that case, there may not even be a notice violation at all. $50 is the correct rate. That's my point. Assume no notice violation. So if you can still underpay somebody, why isn't it just like we said in Guthrie? It's the underpaying that's the problem here. I don't think that's— That's causing the underpayment because the question is, what's causing the underpayment? I don't see how—I still don't—I'm having trouble conceptualizing how messing around with a notice is causing the employer to shortchange the employees. Well, I mean, it's a combination of things that— in one sense, yes, the employer is choosing to pay $10 an hour, right? That standing alone is not going to be an underpayment. It only becomes an underpayment because the notice of the tip credit was not given. Right. So this is very specific. You're not suggesting that a failure to give adequate wage statements vis-à-vis overtime on these facts would create the standing. It's specific to the tip notice. It's specific to the fact that the only reason you can't pay somebody the tip credit wage level is because you haven't given them the notice that you're doing it. But if you give them the notice that you're doing it, you're not underpaying them by doing it.  Okay. All right. That's helpful. I mean, in this case, we do have a 195-3 wage statement claim as well that we believe caused the underpayment of overtime because, in this case, the deficiency in the wage notices was failing to list overtime hours in the overtime rate, and the paid checks were actually issued based on what the wage statement said. So it's not a theory that, oh, if the notice had been there, the employee would have seen it and complained. The argument is because the wage statement was generated by a different person than the one actually generating the check, and the person generating the check was relying on the absence of appropriate notice, they wrote a check that was too low. Yes. That's the causal link. Those are the facts in this particular case, yes. But then conversely, they could have been paid the right amount of money in the notice. Maybe they just could have failed to send it, right? Sure. Like you can get employees who are paid under the table, but it's all calculated according to Hoyle, right? Sure. Just because there's a notice or a wage statement violation doesn't mean that there's an underpayment. Was there a tip credit at issue in Guthrie? No. I believe that was just a regular unpaid overtime type of case. And the plaintiff in Guthrie didn't set forth any concrete harm that resulted from the wage notice and wage statement violation. What about the argument that with a tip credit violation, because the absence of notice is what generates the damages essentially, makes the underpayment an underpayment, that's where the damages are. You don't need a separate notice fine. Well, I mean, there are plenty of claims. In fact, wage and hour claims themselves have multiple remedies for one violation. We have just within the FLSA and New York labor law, you get compensatory damages, liquidated damages under New York labor law prejudgment interests as well. So I don't think there's any issue with that. Can I just clarify, though, in the exchange you just had with Judge Robinson, I think what I understand you're arguing is that because the notice that said, I guess it's like your pay stuff, right, saying this is how much you're owed, generates the check. When you mess up the pay stuff, which has all the calculations, you are causing the underpayment. Is that the theory? Correct. So how would that not also be true for overtime? You don't put the overtime on the pay stuff, and then ADT or your payment processor cuts a lower check. Why would your theory or would your theory in your view also apply in that situation? If the causation worked that way, I think that would apply. So how would it not ever not apply in that situation where you have an employer who's messing around with something on the pay stuff, underreporting hours worked, not reporting overtime hours, meal breaks, or tip credit, whatever it is, whatever goes in the pay stuff, whatever is part of the math that goes into generating a number to go on a check? Give me a situation where the employer messing around with the inputs does not give rise to Article III standing in federal court for a 195 I-list. I just think it would depend on the facts of the specific case, what the chain of events were in any given case. The only thing I want you to hold constant in my hypothetical is that the employer has messed with, misreported something on the pay stuff, and that gets forwarded to a payment processor who then cuts a check for less than the employee is truly owed. If the order happened the way Your Honor just described it, I think there would be standing. Always. If the order were reversed somehow, then maybe there would be standing. So then I guess what I'm asking then is, so what's left of Guthrie? Is it only when the employer personally cuts the check? No, I mean, as I said, I just think you have to look case-by-case. So what's left of Guthrie then? I don't understand. What's left of Guthrie you always need to show a harm and traceability. So why was there not standing in Guthrie then? Let me put it that way. Why would there not, under your theory, be standing, Article III standing in Guthrie? We said there's not. So tell me, are you saying Guthrie is wrong? No, not at all. It sounds like that's the necessary implication of your argument. No, not at all. I don't believe in Guthrie the plaintiff articulated any actual connection between the wage notice and wage statement violations and the underpayment. That plaintiff was arguing, well, I was underpaid, so I have standing. You have to actually articulate the link. And, of course, there are other ways. This is not the only path to standing for these types of claims. As I said before, a lot of plaintiffs are alleging that if they had the information, they would have taken action sooner, which is a totally separate type of traceability than what we're talking about here. Thank you very much. Thank you. We appreciate your very helpful arguments today, and we will also take this case under advisement. We'll now turn to the third case on today's calendar, 25-916. Skeda for Valtningen v. Markowitz et al. Well done. That's pretty good. I worked hard on the pronunciation for that. I guess we'll find out, actually. Please feel free to correct us on the pronunciation. Our Danish is not the first language up here. We have Mr. Weiner. Weiner? It's Weiner, Your Honor. Mr. Weiner, you would like to reserve two minutes for rebuttal. Is that correct? That is correct. Good morning, and may it please the Court. Andy Weiner for Defendant's Appeal in this case. The judgments against the defendant should be vacated for several independent reasons, the first of two of which the Court reviews de novo. First, Skat's claims are barred by the revenue rule, which provides that the courts of one sovereign will not enforce the tax claims of a foreign sovereign. Skat seeks to recover erroneous refunds, which are revenue claims, and require the application of Danish tax law. Second, the district court erred in denying defendants' motions for judgments as a matter of law on the fraud claims against Jocelyn Markowitz and Elizabeth Van Merkenstein, absent any evidence that they committed fraud or entered into agency relationships with anyone who committed fraud. Finally, the deck was stacked against the defendants in this case. This Court has repeatedly said that on issues of mental state, district courts should favor letting the evidence in and having the jury decide, while in this case the district court kept everything that it could, that was helpful to the defendants, kept it out, most notably the testimony of Sanjay Shah, who did commit fraud in this case, and in testimony in Skat's U.K. case testified that he hid the fraud from these defendants. So turning to the revenue rule. The revenue rule, the issue here is whether the substance of the claims, either directly or indirectly, are ones for tax revenue. And the answer here is yes. Under U.S. law, erroneous refunds or tax collection matters, even if no tax was owed as an initial matter, and even if the refunds were obtained by fraud. You can clearly see that under the two mechanisms by which U.S. law provides for the recovery of an erroneous refund. That would be 7405, erroneous refund suit in district court, or as a matter of assessment, 6201. Both of those provisions are subject to statute of limitations that extend the limitations period in the instance of fraud. So the furthermore, in complement to that, not only under U.S. law, but under U.S. treaty law, you look at the U.S.-Japanese tax treaty, that treaty defines revenue claims as including claims that an individual filed a fraudulent claim for refunds. And so here you have U.S. domestic law and U.S. international law speaking in one voice. Is it fair to read into the language of a tax treaty with another country, what that bearing it has here? Is that a reasonable approach to take to this? I'm sorry. I'm having a little hard to hear you. I'm sorry. I'm questioning whether it's fair to read into how we should interpret what's going on here based on a treaty with another country. Yeah, fair enough. However, the revenue rule itself. First of all, as we cited in Huntington v. Atrio, which had to do with a very similar rule regarding the enforcement of foreign penal law, the court indicated that it's not a matter of what the foreign country calls it. It doesn't matter whether it calls it a criminal law or a civil law. The question is whether it constitutes a penal law under our system. And so in Huntington v. Atrio in the restatement of relations of foreign law, they both clearly say that this is a question of U.S. law. And here, so book two, how the issue would be handled under U.S. law, which also informs these are not independent issues. How we handle matters under U.S. law informs our treaty relations in which, you know, where we enter into a treaty with Japan to say that, look, we will provide certain collection assistance when it comes to fraudulent claims for refund, and here's the limited amount of the assistance that we will provide. In the U.S.-Denmark treaty, no assistance is provided with respect to the nationals of our own country with respect to Denmark's tax claims. So you view this as the Japan treaty as an exception that implies that, of course, with regard to every other country, there's a presumption that all of this falls within, I guess, all of this falls within revenue. This is, I guess maybe my question actually maybe goes more to that question of how we determine what falls under the question of what is revenue. Is there some type of claim that SCAT could ever bring that would not fall into the category, in your view, of the revenue role? Absolutely. Like what type of? If there was a contract claim, if there was a tort claim, those things have nothing to do with tax revenue. The question that this court in Attorney General ---- Well, in the end of the day, what this court said in Attorney General of Canada is you look to the substance of the claim. It does not matter how the parties frame their cause of action. In fact, in Attorney General of Canada, you had the Canadian government coming into a U.S. court and saying, we're enforcing a civil RICO action, which has nothing to do with Canada law. And the court rightly said, but we have to look to the substance of what you're trying to do here. And the substance is you're trying to enforce your tax laws. Just as the, just as I'm going to refer to it as SCAT, Your Honor. My Danish is not any good either. Just as SCAT has come into, SCAT is acting as a sovereign, as being the exclusive administrator of Danish tax law, coming into a U.S. court saying, we are pursuing these erroneous refunds that were obtained as a matter of fraud. And that too is a tax claim. So here's what's, I don't mean to, what's confusing me or at least I'm struggling with. We're calling these refunds, but they're not really refunds. There were no dividends. There was nothing withheld. This is a claim on a, for a refund against something that doesn't exist. And I'm trying to figure out, certainly you would concede, I think based on your response to my colleague, that if some scammer had sent a bunch of bills for photocopiers and all sorts of services that were never provided to SCAT and SCAT had paid the bills, they could, that wouldn't be a revenue rule claim if they were suing to reclaim them. And I'm just trying to figure out why, because there actually weren't dividends, there weren't withholdings. This isn't that, this isn't a bill for services that weren't provided. It's a fake thing rather than say there had been withholdings and the question of whether these people were entitled to them implicates tax law questions. Two responses, Your Honor. First of all, the, the, these were handled as substantive tax claims by, by SCAT itself. One of the things I think is really important here and is that the, the submissions for effectively claims for refunds, they were called refund reclaim applications in Denmark, but these claims for refund were received. And then SCAT makes a substantive determination under its law, under its tax withholding act, under section 69B and says, okay, we've got this application. Here's the information provided in the underlying materials. We have to make a substantive determination as to whether this taxpayer is entitled to the refunds or not. Now they made a determination, then they revoked that determination subsequently when they said there was fraud. Now, if the point is, is that, well, fraud brings it outside of the revenue rule, that's clearly not correct because we have tons of precedent in which fraud is not an exception to the revenue rule. And SCAT has even conceded that fraud is no exception to the revenue rule in this case. And in that, for that point, I would refer the court to Banco do Brasil, which was based on a fraudulent conspiracy, same type of claim that we have here. In fact, in Attorney General of Canada, you also have a fraudulent scheme that supposedly RJR perpetrated against the Canadian government. And that's one in which there, there were taxes due, right? There were taxes due and the Canadian government came in and said, you people really owe those taxes. And the fraud was an operation to cheat us the taxes. And so it seems to me that the distinction, at least adopted by the district court here, there was never any tax due here. This isn't really a tax case. Their fraud took the form of seeking a tax refund to which they weren't entitled, but there was never any taxation. Could you respond to the UK Supreme Court decision? Because my understanding is that the revenue rule is derived from the common law and presumably that would lead the various common law jurisdictions, UK, Canada, the US to presumably have a similar, if not same rule that applies today. They looked at this exact case and said, this does not fall within the revenue rule, right? Correct. And my understanding is that they, they pretty much agreed with the district court analysis here. It was in line. Is that right? Yes. So tell us, is there a different revenue rule in the UK these days compared to what we have in your view? Have they evolved in different ways such that they don't mean the same thing? Because when I read Dicey's rule, it looks to me like it means it's, it's stated the same way, or is it that in your view, the UK Supreme Court simply got it wrong? I think there are two things. I think, yes, the UK court got it wrong and I'll explain, but also I do think that the UK court also acknowledges that there are different strains of the revenue rule and in fact points out on page six of its opinion that the U S version of the revenue rule has evolved differently. And I would also point out that the U S version of the revenue rule as elucidated by this court in attorney general of Canada specifically speaks to things that are uniquely United States policies and interests like separations of powers. Well then let me pause on that then if I could, because I want you to resume what you're saying. But in terms of the policy rationale, it seems that one of the most significant policy rationales that our courts have articulated in support of the revenue rule is we, as American courts should not be engaging when possible in an assessment of what foreign countries tax laws are and what they mean. And I get that even though all the time we do wind up having to interpret and even apply foreign law. So, but this is an exception of the revenue rule. The thing is, how does that apply in this case where I understood that given the pre trial concession here, that there were in fact no beneficial ownership, there was no beneficial ownership. Everybody agreed going into this trial that there was no withholding, there was no refund that was due. The only question was, did the defendants understand this, what was going on? So there is no need as I understand it for the district court or our court to figure out what Danish law means, who actually owed what, if anything to the Danish government, that's out the window. The only question is whether the defendants understood. So in that circumstance, it seems to me, and it's kind of odd, but it seems to be our revenue ruling, revenue rule cases have looked at the facts of the case to figure out, are we going to be tasked with the interpretation and application of foreign law? I don't see how we are to figure out liability. You know what I mean? So I don't know if you can respond. That was a lot.  Yeah. I think there are three questions. There are three questions that I think you posed that I'd like to respond to taking them in reverse order, starting with your last one. The issue here is whether they,  under Attorney General of Canada, it's whether the substance of the claim is one for tax revenue. Now, one of the ways in which the courts have looked heavily is whether it's an extraterritorial application of the foreign sovereigns tax laws. Now, it does not necessarily mean that it requires, it's not a difficult interpretation. It's not really. It's just sort of more of an extraterritorial collection. I mean, it's like enforcement of a foreign judgment. Well, they're not extraterritorially applying their laws, really. They absolutely are,  But in this case, how? So how did these erroneous refunds come about? They came about, again, by virtue of a request for refund coming in, a substantive determination that these amounts should be paid, and then a reconsideration following an audit in which they obtained information from the United States based on the treaty, based on the tax treaty provisions. And they said, look, we don't actually, and this is what, this is the, this is what IRS does all the time. We disagree with the substantive numbers that you provided. And based on that disagreement, based on the fraud that was perpetrated by Solo and Shaw here, we've substantively determined that in a matter of Danish law, Go to my question, which was, I get what you're saying. If this trial had been about whether anybody owes, who owes what under Danish law. But again, my understanding is by the time this came to trial, those issues were out the window. Everyone agreed that Denmark was on this money, that the only question is whether these defendants knew about it. So what is it about the case as it evolved and now comes to us in this posture that requires anybody to delve into questions of Danish law? I thought that's all gone. In order to determine as to the fact that these refunds were in fact erroneous. I mean, you call it a collection action, but in order for it to be a collection action, there needs to be a determination that the refunds were in fact erroneous and for the refunds to in fact be erroneous. You have to make a substantive determination. Now I understand, but I thought the district court didn't make this substantive determination. I thought there was a concession by the parties. That's what I'm saying. I thought the parties agreed that this money is owed back, that there was no Danish tax liability, that there was no appropriate tax refund. So I get your point. If this had been a different trial where everybody had to say, put six Danish tax professors on the stand, or provide affidavits to the district court to explain to the district court what Danish tax law was. But once that all got sucked out of the case, and what's left? So my question is, why is it that given what's left, which is just what do the defendants know, how is this still a revenue rule case? So, Your Honor, I want to be very precise about the concession that actually was made here. The concession that was actually made here is, looking at all the discovery, looking at the analysis that was capable through the litigation process, the defendants agreed that no shares were acquired by Solow. That's the concession. And that no dividends were issued. And that no dividends were issued to these defendants, because they didn't know the shares. So no money was withheld from any dividends on account of any shares, relative to this case. Because there weren't any dividends to withhold money from.  But, the important thing is that the single concession was that there were no shares. Now, What's left to determine under Danish law then? There was no money out there. There's no trickiness of Danish law.  nobody had to actually think more than, you know, what, 0.1 seconds to figure out, well, of course, there's no Danish tax refund. Your Honor, if you were to, if by that logic, then you would, then fraud is out of the revenue rule. No, no, no, no. But let's say there was a complicated thing where they owed some tax. Like in Canada, these people owed tax to Canada, right? There's tax, there's actual tax liability. We say, forget it. Revenue rule, go away. But here, nobody owed tax. Nobody was owed a refund. It just seems like that was not in dispute functionally. However, was it? Was it functionally in dispute? No, no, answer the question. Was it functionally in dispute that nobody owed any tax and nobody deserved a tax refund? Was that, were those two issues actually in dispute in this trial? In any real way? I'm failing to understand. Yes, it was. It was in dispute in the sense that it was in dispute just as much as it was in dispute in Attorney General of Canada. Remember, RJR Nabisco.  It was in dispute. Put aside Canada. You're saying it was actually disputed and that may betray my lack of understanding of the trial. What was your side's view then? Or what evidence did you put in to say that, no, no, there were some refunds due to people. Did you put in evidence to that effect? No, Your Honor. Did you say that somebody did owe tax to the Danish government through all these transactions? What we said. No, no, did anybody ask, did anybody on your side argue that there was a tax liability?  Okay. Also, I guess going back to my initial question, you can then explain it. When I say was this issue in dispute, I mean, people putting in evidence on both sides and were they arguing different sides of the tax liability issue to the court? No. Yeah. That sounds to me like not in dispute. Now, if you have a different definition of what was in dispute, tell me what that means. Okay. Your Honor, what was in dispute was the, well, obviously the fraud, negligence, and unjust enrichment claims. The, the premise of all of those claims is that the taxpayers were, defendants weren't entitled to the refunds that they received. Now, that is a concession that we made at the start of trial by virtue of the fact that we received no, that we received no shares. But just because you take one element of a claim off the table by virtue of a concession doesn't mean that that's not part of the case anymore. It's conceded. The end of the day, though, is that, I mean, I think more fundamentally, our argument with respect to the revenue role is that it does not matter. That no tax was owed in the first place. Well, to U.S. law, it does not matter. Wilson squarely speaks to this. My question, if I can go back, this is maybe a bigger framing of how the revenue rule works. We have lots of rules in the law that are categorical, right? If certain conditions are satisfied, there's no jurisdiction or whatever. And it doesn't matter. You don't look on a case by case basis to see what happens to be the facts. The way we have interpreted the revenue rule seems to be a very case specific thing.  for example, when asking whether application of the revenue rule or not is warranted, we ask, what is the view of the executive? For example, my understanding, the executive hasn't weighed in at all in this case, right? The U.S., or did it? Well, they haven't filed it. I mean, that's what I mean. Yes. But hypothetically, if the U.S. government had weighed in and said, we think that this is a perfectly good lawsuit. We love Denmark. They're our greatest ally. We want to support them. That, we have said in our cases, would matter, right? That if the U.S. had acquiesced and supported this through an amicus brief or statement of interest by the Department of State, office of legal advisor, that would count. So we have a very case specific application of the revenue rule, right? It's not simply, we ask, is it a tax-ish thing? If so, it's out the window. We have things like executive weighing in. And it seems to me like why, it seems to me that that sort of case by case analysis leads to the further analytical question of, does the actual adjudication of the claims in this case require a court to delve into the niceties of foreign law? And I think that's where, at least your opponent's view, maybe the district court's view comes in, because of the concession, that everybody knew there was no tax owed and no tax refunds due. This is not in the heartland of what the revenue rule was able to do. And that's a case specific analysis. I would say that, respectfully disagree, Your Honor, because the way that this court has laid out, and other courts have laid out the definition of the revenue rule, is you look to the substance of the claim. And by virtue of looking to, the substance of the claim is informed by U.S. law, by U.S. treaty law, by international law. And in all of those respects, the basic principle is, it does not matter if, for example, no tax was owed. I would suggest that the exclusion of this case from the revenue rule is unprincipled. Because it does not, is not informed by any substantive understanding of what a tax claim or a revenue claim is. It's as if the court held its finger up to the wind and said, this doesn't feel like a revenue claim to me. But that's in fact not right. This case doesn't require interpretation or application of disputed Danish tax laws. Not in dispute. Correct. Hopefully that's how you understand our previous argument. But that would be the argument that the foreign policy concerns, that generally keep courts away from these tax issues, fall away because nothing was in dispute. That would be the argument. Well. That doesn't play specific analysis. But that is, I mean, remember this court has said that the revenue rule serves many masters. One of which is the, is one of sovereignty. That we are not going to become, this court is not going to become the arm of a foreign sovereign when it comes to enforcement of its tax laws. But there are other issues. It's like Judge Warren and Hans' view that this also weighs into policy considerations. And courts shouldn't be in the position of making policy determinations as to whether or not, in fact, SCAT is operating its tax system adequately or appropriately. And there are other issues regarding separation of powers. One of the things that I think is really important about the U.S.-Japanese treaty is, here you've got the executive. Now I agree that the executive branch has not weighed in on this case. But not yet. In Canada, it only weighed in at the cert stage. So before this court, there was no amicus brief. This is perhaps a fine point. But has either side ever asked the executive to weigh in one way or the other, give us this case a blessing, or tell the courts to butt out? Have you either side ever?  You haven't, I suppose. You can speak for yourself. But I do think that the important thing here is that the question as to whether this is a tax claim or not, we have a mode of analysis that was not done here. I think it's important that the district court in this case called it, you know, garden variety commercial fraud. Because that commercial is doing a lot of work there. Because this is a sovereign, SCAT, coming into a U.S. court, trying to recover, and even to use your words, this is a tax collection matter. And calling it not a claim subject to the revenue role, because obviously that creates problems for its ability to be able to utilize U.S. courts. But up until the point at which they crossed the Rubicon and filed suit, SCAT absolutely did treat it as a Danish collection.